412 So.2d 540 (1982)
STATE of Louisiana
v.
Travis Raymond CARTER.
No. 81-KA-0042.
Supreme Court of Louisiana.
April 5, 1982.
*542 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Dale Cox, Robert W. Gillespie, Asst. Dist. Attys., for plaintiff-appellee.
Tommy J. Johnson, Shreveport, for defendant-appellant.
MARCUS, Justice.
Travis Raymond Carter was charged by the grand jury in the same indictment with two counts of aggravated crime against nature (La.R.S. 14:89.1), two counts of aggravated rape (La.R.S. 14:42), one count of armed robbery (La.R.S. 14:64) and one count of attempted first degree murder (La. R.S. 14:27 and 14:30). After trial by jury, defendant was found guilty as charged on one count of aggravated rape and on the count of attempted first degree murder. He was found not guilty on the other counts. Defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for his conviction of aggravated rape and to imprisonment at hard labor for fifty years for his conviction of attempted first degree murder. The court expressly directed that the sentences be served consecutively. On appeal, defendant relies on five assignments of error for reversal of his convictions and sentences.

FACTS
The victim of the charged crimes testified to the following facts at trial. On the morning of June 7, 1979, the victim left work between the hours of 2:00 and 3:00 a. m. After going home to check on her four children and taking her eldest son out for a sandwich, the victim drove to a friend's house. On the way, she noticed someone following her. When she arrived at her friend's house, a truck pulled up at the house next door. As she got out of her car, defendant yelled to her that she had a gas leak. The victim leaned over to check her car, whereupon defendant produced a gun and forced her into his truck. Defendant drove the victim to a secluded area where *543 he ordered her to disrobe. At gunpoint, defendant forced the victim to submit to two acts of aggravated crime against nature and raped her twice, anally and vaginally. Defendant then allowed the victim to dress and drove her to another area. At gunpoint, defendant took the victim's keys and cigarette case which contained $60 in cash. He then told her to get out of the truck and walk toward a "woodsy" area. Fearing that she was going to be killed, the victim, while getting out of the truck, first refused to start walking. Defendant then pointed the gun at her head and pulled the trigger but the gun did not fire. At this point, the victim started running and defendant fired several shots at her, one of which hit her in the left side. She was able to make her way to a nearby residence where the police and an ambulance were called. The victim made a positive identification of defendant as the perpetrator of these crimes.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion for severance of offenses. He argues that he was prejudiced by the joinder thereof.
At the outset, we note that two or more offenses may be charged in the same indictment under La.Code Crim.P. art. 493 if the offenses charged
are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
In the instant case, the offenses met the test set forth in the above article and since the punishment for each offense is necessarily confinement at hard labor, the mode of trial (jury composed of twelve jurors, ten of whom must concur to render a verdict) is the same. La.Code Crim.P. art. 782. Hence, the offenses were properly joined in the same indictment. La.Code Crim.P. art. 493.
When an accused has been charged in the same indictment with two or more offenses pursuant to art. 493, he may apply for severance of offenses under La.Code Crim.P. art. 495.1, which provides:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
We first note that the problem of possible prejudice resulting from joinder of offenses considered in State v. Washington, 386 So.2d 1368 (La.1980), is not present here since evidence of the crimes committed by defendant, as part of a continuous criminal transaction, would each be admissible at trial because it is part of the res gestae. La.R.S. 15:447, 448; State v. Kaufman, 331 So.2d 16 (La.1976). Consequently, when evidence of the offenses would otherwise be admissible as part of the res gestae, the possibility of prejudice would in no way be enlarged by the fact of joinder of offenses. State v. Carter, 352 So.2d 607 (La.1977).
Hence, where the offenses joined are part of the same transaction, as here, the critical question which must be determined by the trial judge presented with a motion for severance of offenses is whether, in view of the number of offenses charged and complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. La.Code Crim.P. art. 495.1; State v. Carter, 362 So.2d 510 (La. 1978).
In the instant case, defendant was charged in one six-count indictment with four types of offenses, aggravated crime against nature, aggravated rape, armed robbery and attempted first degree murder. All of the offenses were connected in a continuous series of events occurring within one and one-half hours during which defendant drove the victim around in a truck. All of the crimes took place in defendant's truck except for the attempted first degree murder which occurred as the victim attempted *544 to escape therefrom. Only one victim was involved, whose testimony constituted the essence of the state's case. The victim related in simple terms the consecutive events constituting each of the crimes charged and the elements thereof. Only four types of offenses were at issue, and the trial judge carefully and clearly explained the elements of each to the jury. We, therefore, conclude that in this case, the trier of fact could compartmentalize the events and apply the law intelligently to each offense and that defendant was not unfairly convicted on the basis of prejudice or confusion instead of on the evidence of the crimes. Accordingly, the trial judge did not err in denying defendant's pretrial motion for a severance of offenses.
Assignment of Error No. 1 is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
Defendant contends the trial judge erred in denying his motions for a mistrial on the ground that the testimony of two police officers referred to inadmissible evidence of other crimes.
On direct examination, Cecil Carter, one of the detectives involved in the investigation of the case, was asked by the state:
On June the 11th, 1979, Detective Carter, did you again get involved in this investigation?
He responded:
Yes, sir. At that time I attempted to put Travis Carter in a physical line-up.
Defendant objected. Outside the presence of the jury, defendant moved for a mistrial asserting that the reference to the attempt to place defendant in a physical lineup on June 11, 1979 (four days after his arrest) was an impermissible reference to another crime because the victim of the instant crimes was in the hospital at the time. The state argued that defendant, on being informed that he was going to be in a lineup, cut his hair short, removed his beard and mustache, and broke his glasses, thus "drastically" changing his appearance from the time of his arrest. Hence, the state argued that evidence of the attempted lineup was relevant to explain why defendant was not placed in a physical lineup in this case. The trial judge denied the motion for a mistrial but sustained defendant's objection of relevancy to any further questioning concerning the lineup. Defendant rejected the trial judge's offer to admonish the jury.
During direct examination of Lt. Scotty Henderson, while questioning him in reference to certain letters allegedly written by defendant to Chief Almon of the Bossier City Police Department, the state asked:
Now, without going into the contents of the letters or the statement what did you do with them after that?
The witness responded:
Okay. I read them and the Chief asked me to check into it and see if they pertained to any active cases that we were working. I ascertained that they didn't and I called Detective Breedlove with the Bossier Parish Sheriff's Office and asked him if these letters would have anything to do with anything they were working and he said yes, they would and
Defendant objected. The objection was sustained. Outside the presence of the jury, defendant moved for a mistrial asserting that the reference to a connection between the letters written by defendant and cases being worked by the sheriff's office constituted an impermissible reference to other crimes. The state argued that there was no reference to other crimes. The trial judge denied the motion for a mistrial. His offer to admonish the jury was rejected by defendant.
A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney or a court official, during trial or in argument, would require a mistrial on motion of defendant. La.Code Crim.P. art. 770(2). First, a police officer is not a "court official"; therefore, art. 770 does not apply. Rather, art. 771 of the Code of Criminal Procedure would be the *545 applicable article. State v. Manuel, 408 So.2d 1235 (La.1982); State v. Hardy, 344 So.2d 1018 (La.1977).
La.Code Crim.P. art. 71 provides in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
. . . .
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
We do not find nor does defendant claim that the allegedly impermissible remarks were deliberately obtained by design of the prosecutor to prejudice the rights of defendant. At least with regard to the statement concerning cases being worked by the sheriff's office, the police officer's answer was unsolicited and unresponsive to the prosecutor's question and neither reference was deliberately uttered by the witnesses to prejudice defendant. Unsolicited and unresponsive testimony is not chargeable against the state to provide a ground for the reversal of a conviction. State v. Hardy, supra. No connection was made between the attempt to place defendant in a lineup four days after his arrest and any other crime. The victim could have been brought to the jail to view the lineup or the lineup could have been conducted at the hospital. Nor was any connection made between the letters allegedly written by defendant and any other crimes allegedly committed by him. Under the circumstances, we are not convinced that these isolated references were of any consequence. It is most unlikely that they would suggest to the jury that defendant was being investigated for other crimes. Rather, there is more reason to believe that the jury considered that the lineup was attempted for this particular investigation and that the sheriff's office was working on the instant case. Therefore, we do not find that the remarks created any prejudice in the mind of the jury. The trial judge did not err in denying defendant's motions for a mistrial.
Assignments of Error Nos. 2 and 3 are without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in denying his motion to suppress certain oral statements made by him to law enforcement officers on the night of his arrest. He argues that his request for counsel was denied prior to making the statements; therefore, they were not freely and voluntarily made.
At the suppression hearing, Deputy John E. McKinley of the Caddo Parish Sheriff's Office and Chief Cliff Heap of the Shreveport Police Department testified that they arrested defendant at his place of employment. Deputy McKinley orally advised him of his constitutional rights. The two officers took defendant to the Caddo Parish jail where he was again advised of his rights. At this time, he signed a Miranda rights form stating that he understood his rights. The two officers then took defendant to the Shreveport Police Department where he was again advised of his rights and signed another Miranda rights form. Chief Heap further testified that he then took defendant to city jail where he read defendant his rights for each charge from separate forms, each of which was signed by defendant. Both officers testified that defendant never requested an attorney during this time. Chief Heap returned to the city jail approximately three hours later to conduct an interview with defendant. Detective Daniel B. Olds of the Shreveport Police Department accompanied Chief Heap. Both officers testified that before the interview began, *546 defendant was readvised of his rights and again signed a waiver form. They also stated that he never requested an attorney during the interview. Defendant testified that he requested an attorney when Chief Heap read him his rights on a different card for each charge. He further stated that Chief Heap told him he would have to wait. At the conclusion of the hearing, the trial judge accepting the version presented by the police officers, ruled that defendant's statements were voluntarily made after having been advised of and having waived his Miranda rights.
Before the prosecution may use statements stemming from custodial interrogation of defendant, it must be established that the accused was advised of his Miranda rights and that he knowingly and intelligently waived these rights. Moreover, if he indicates in any manner and at any stage in the process that he wishes to consult with an attorney, the interrogation must cease. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The admissibility of any statement is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a statement will not be overturned on appeal unless they are not supported by the evidence. State v. Dewey, 408 So.2d 1255 (La.1982).
After a review of the record, we are convinced, as was the trial judge, that the state satisfied its burden of affirmatively proving that the statements were freely and voluntarily made after defendant had been advised of and had waived his Miranda rights. Defendant's contention that he requested an attorney and was told he would have to wait is in direct conflict with the testimony of Chief Heap, Deputy McKinley and Detective Olds. Accordingly, we are unable to say that the trial judge erred in denying defendant's motion to suppress.
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends that the sentence for attempted first degree murder should have been made concurrent with the sentence for aggravated rape. He also argues that the sentences imposed are excessive.
La.Const. art. 1, § 20, prohibits the imposition by law of excessive punishment. Accordingly, we have held that imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this court on appellate review. The trial judge's reasons in imposing sentence, as required by La.Code Crim.P. art. 894.1, are an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Jacobs, 383 So.2d 342 (La.1980). Moreover, the trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentences imposed by him should not be set aside as excessive in the absence of manifest abuse of his discretion. State v. Jacobs, supra.
For an offender without prior felony record, ordinarily concurrent rather than consecutive sentences should be imposed, especially where the convictions arise out of the same course of conduct within a relatively short period. State v. Jacobs, supra. However, consecutive sentences may be justified when, due to his past conduct or repeated criminality over an extended period, the offender poses an unusual risk to the safety of the public, similar to those posed by habitual or by dangerous offenders.
In the instant case, defendant first raped and then attempted to murder the victim. At the sentencing hearing, the trial judge stated that the crimes for which defendant was convicted were "extremely heinous." Moreover, defendant had previously been convicted of felony offenses. Under the circumstances, we are unable to say that the trial judge abused his discretion in making the sentence for attempted first degree murder consecutive with the sentence for aggravated rape. The sentence *547 imposed for aggravated rape (life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence) is mandatory. We do not consider the sentence excessive for such an offense. The sentence for attempted first degree murder is imprisonment at hard labor for not more than fifty years. Under the circumstances of this case, we are unable to say that the trial judge abused his wide discretion in imposing the maximum sentence.
Assignment of Error No. 5 is without merit.

DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.